## Corlies *vs.* Waddell.

Recognizances in criminal cases should not be made returnable before a judge, at chambers; and if made returnable in that manner, the prisoner is not bound to appear there.

They should be made returnable before the court, at a term thereof.

A marshal of the United States bears the same relation to the circuit court of the United States that a sheriff does to the county courts in this state; and his duties are very analogous to those of a sheriff.

A marshal has no right to receive money upon an estreated recognizance in a criminal case, until an execution has been duly issued and placed in his hands.

And if a surety in a recognizance of that nature, after having waived the issuing of an execution, pays to the marshal the amount due upon such recognizance, he may sue the marshal, while the money is still in his hands, in an action for money had and received, and recover the same back.

Error from the superior court of the city of New-York. In April, 1838, James Bottomley was arrested on a warrant issued by S. Rapelje, an officer of the United States government, (a commissioner,) for smuggling and perjury. The prisoner was taken before that officer, and entered into recognizances to appear at the chambers of Judge Betts on the 24th of April. On the return day of the recognizances, Bottomley did not appear; and his recognizances were subsequently estreated, by the circuit court, and an entry made on the minutes of the court, ordering execution to issue. Corlies, the plaintiff, was the surety in the recognizances. He told Rapelje, the marshal, that there was no necessity for issuing execution, but that he would pay the money whenever it was called for. Accordingly, no execution was issued. Rapelje afterwards called on Corlies for the money, who delivered to him $4000, to be paid to Waddell, then United States marshal, to be applied to the discharge of the recognizances. Subsequently, however, and while the money was in Waddell's hands, Corlies changed his mind, and gave him notice not to pay the money over, and thereupon brought his action, in the superior court, to recover the amount, as money had and received. In that court a verdict was rendered for the defendant; the court holding that the defendant

had the power to receive the money either as the marshal of the United States, or as being considered a disbursing officer of the United States; and that his receipt was a satisfaction of the recognizances.

· *Jonathan Miller*, for the plaintiff. I. The recognizances were void *ab initio.* Sylvanus Rapelje was not a, commissioner authorized to take them. His authority was derived exclusively from the 104th rule of the circuit court, and extended only to the taking of bail in civil cases. The circuit court gave a construction to the 104th rule in *Hornbeck's case. (See MS. certificate of Hon. S. R. Betts, Dist. Judge.)* In which case it decided that an affidavit sworn to in a criminal proceeding before a commissioner *ex officio* under that rule was not perjury, on the ground that a commissioner under that rule had no legal authority to administer oaths in criminal proceedings: and the judgment was arrested. And this is further shown by the fact that the said court subsequently amended the rule, and gave to the commissioners under the rule power to take affidavits, bail, &c. in criminal cases. The circuit court therefore had no jurisdiction or right to order the recognizances to be estreated. If Rapelje had authority to take recognizances in criminal cases, still the recognizances in question were not taken nor made returnable pursuant to law, so as to give the circuit court of the United States jurisdiction of the matter of the recognizances. There was no examination of, or proof against, the prisoner, nor were the recognizances made returnable before any court, but before a judge at chambers.

II. The defendant, although a marshal of the United States, did not collect the money under or by virtue of any process or authority of any court, or receive the same in his official character. He acted merely as the agent of the plaintiff to pay it over to the United States. And no act having been done on the part of the United States amounting to an acknowledgment that the receipt of the money by the defendant was a payment to them, his receiving the same did not discharge the plaintiff's liability to the United States. The plaintiff has the right to

Corlies *v.* Waddell.

demand and have back his money from the defendant, even if the recognizances shall be held to be valid. (*Chit. on Cont.* 617, ed. of 1842. *Williams* v. *Everett*, 14 *East*, 582, 597. *Seaman* v. *Whitney*, 24 *Wend.* 260. *Brind* v. *Hampshire*, 1 *Mees. & Welsb.* 365. *Wedlake* v. *Hurley*, 1 *Cromp. & Jerv.* 83. *Scott* v. *Porcher*, 3 *Mer.* 651. *Owen* v. *Bowen*, 4 *Carr. & Payne*, 93. *Taylor* v. *Lendy*, 9 *East*, 49.)

III. If, however, the defendant in the receipt of the money, may be claimed to have been the agent of the United States, yet the plaintiff would be entitled to recover the money back from the defendant in this action, on the ground of its having been parted with under mistake of material facts : the defendant not having paid it over to his principal before suit brought. Rapelje supposed he had authority given to him to take the recognizances, when he had not. This was a mistake of fact, and not of law. The commissioner *might* have had power to take bail in criminal cases. The court *could* have conferred it upon him, but had not done so. Whether they had or not, was *a fact*. And the plaintiff, when he executed the recognizances, and when he deposited the money with the defendant to be paid over to the United States, supposed and believed that Rapelje had had authority given to him to take such recognizances. These were mutual mistakes of material facts supposed to exist, and which did not exist, and which alone influenced the plaintiff to part with his money. (*Story on Agency*, § 300. *Lazall* v. *Miller*, 15 *Mass.* 207. *Milnes* v. *Duncan*, 6 *Barn. & Cress.* 671. *Putnam* v. *Westcott*, 19 *John.* 73. *Mowatt* v. *Wright*, 1 *Wend.* 355.)

IV. As it does not appear that the United States have made any claim, or pretence of claim, to the money in the defendant's hands, the only question before the court is whether the plaintiff, or the defendant, as between them personally, is entitled to the money ; and personally the defendant has neither a legal or equitable right to retain the money from the plaintiff.

The exceptions on the part of the plaintiff were well taken; and the judgment rendered by the superior court in favor of the defendant was erroneous, and should be reversed.

Corlies *v.* Waddell.

*F. F. Marbury,* for the defendant.   I.  The recognizances taken before Rapelje, and the orders of the circuit court of the United States estreating them, and directing execution to issue, were legal and valid.  (*Act of March 2,* 1793, § 4.   1 *Stat. at Large, p.* 394.   2 *Id.* 679.   *Act of Feb. 20,* 1812, § 1.   *Rule 104 of Circuit Court.*)   It has never been decided that a United States commissioner has not power to take bail in criminal cases.  *Hornbuckle's case* does not decide it.   The statute is that he may take *bail* but not affidavits.  (*Burr's Trial,* 80. 1 *Gall.* 15.   *Case of the Alligator, Id.* 476.)

II.  But if there was any defect, or irregularity, in those recognizances, or in the rules estreating them, the circuit court was the proper tribunal to correct such defect, or irregularity.   And that court having twice expressly refused to do so, such refusal is to be deemed and taken as the judgment of that court, either that there was no such defect or irregularity as is now imputed, or that the plaintiff was not entitled to the relief which he sought.   It is the judgment of that court, in the case; and so long as that judgment stands, and the rules estreating the recognizances and awarding execution thereon remain in force, no other court will look behind them, or allow the inquiry to be made in a collateral suit, whether the previous proceedings were regular; but will presume them to have been so.  (*U. States v. Lathrop,* 17 *John.* 4.   *Matter of Ferguson,* 9 *Id.* 239.   1 *Story's Laws of U. S.* 800.   *The People v. Nevins,* 1 *Hill,* 155. *Supervisors of Onondaga v. Briggs,* 2 *Id.* 136 ; *S. C.* 2 *Denio,* 29.   *Mackay v. Blackett,* 8 *Paige,* 388.   *People v. Collins,* 19 *Wend.* 56.   *People v. Bristol & Rensselaer Turnpike Co.,* 23 *Id.* 226.)

III.  The payment to the defendant, by the plaintiff, was either a payment under coercion of law, or legal process, or, it was a voluntary payment made by the plaintiff, without any fraud on the part of the defendant; and with full knowledge of all the facts, or the means of such knowledge, on the part of the plaintiff.   In either case, it is well settled that the money so paid cannot be recovered back.   1. There were rules of a competent tribunal, estreating the recognizances, and awarding executions

---

Corlies *v.* Waddell.

---

thereon. The deputy marshal exhibited those rules to the plaintiff, and he paid the money. This was a payment under legal process, within the decisions on that subject, and cannot be recovered back. (*Harriott* v. *Hampton,* 7 *T. R.* 269. 2 *Smith's L. Cas.* 237. *Chit. on Cont.* 638. *Kist* v. *Atkinson,* 2 *Camp.* 63. *Hamlet* v. *Richardson,* 9 *Bing.* 644. *Loomis* v. *Pulver,* 9 *John.* 244. *Brown* v. *McKenally,* 1 *Esp.* 279. *Milnes* v. *Duncan,* 6 *B. & Cress.* 679. *Kendall* v. *Atkin,* 10 *Bing.* 438. *Mowatt* v. *Wright,* 1 *Wend.* 355. *Hubberton* v. *Wakefield,* 4 *Camp.* 58.) 2. If this was not a compulsory payment, under legal process, then it was a voluntary one, without any fraud on the part of the defendant. And it was made with full knowledge of all the facts, or with the means of such knowledge on the part of the plaintiff; in which case the payment is conclusive, and cannot be recalled. (*Goodall* v. *Lowndes,* 6 *Ad. & El.* 464. *Goodman* v. *Sayer,* 2 *J. & W:* 263. *Sprague* v *Birdsall,* 2 *Cowen,* 419.)

IV. If this was a case of payment under mistake, it was a mistake of *law,* and not of *fact.* And money paid under mistake of *law* cannot be recovered back.

V. But even if there was a mistake of *fact,* it does not follow that the plaintiff is entitled to recover. 1. It is not every mistake of *fact* which will enable a party to recover back money paid under such mistake. 2. When a man has actually paid what the law would not have compelled him to pay, but what in equity and conscience he ought to pay, he cannot recover it back again in an action for money had and received. And the principle which allows the plaintiff in the action of assumpsit to recover what, *ex æquo et bono,* he is entitled to, operates in favor of a defendant when called on to pay money. If he can show the better equity, he will be entitled to retain it. (*Moses* v. *McFarland,* 2 *Burr.* 1010. *Eddy* v. *Smith,* 13 *Wend.* 48. 1 *Story's Eq.* 121. *Brisbane* v. *Dacres,* 5 *Taunt.* 143. *Bize* v. *Dickeson,* 1 *T. R.* 285. *Cartwright* v. *Rowley,* 2 *Esp.* 723. *Haynes* v. *Hayton,* 7 *B. & C.* 293. 2 *C. & P.* 621. *Bilbie* v. *Lumley,* 2 *East,* 469.)

The claim of the plaintiff, under the circumstances of this

Corlies *v.* Waddell.

case, is without any equity to support it; and the judgment of the superior court should be affirmed.

*By the Court,* HURLBUT, P. J.   It is contended by the defendant that he was authorized to receive the money, and that his receipt would be a discharge of the recognizances.   The plaintiff, on the contrary, insists that the commissioner who issued the warrant had no right to take recognizances in criminal cases.   On this point we are not fully satisfied; but we are of the opinion that the recognizances should not have been made returnable at chambers.   The prisoner could not be bound to appear there; but the recognizances should have been made returnable before the court, at a term thereof.   The majority of this court have come to the conclusion that the recognizances, and all subsequent proceedings, were utterly void.   We have tried, we confess, to come to a different result, but find it impossible.   There being a moral obligation resting upon the bail, had the money been received by any one having authority to apply it to the satisfaction of the recognizances—if it had reached its destination—the court might have allowed it to remain there.   In that case we might have held that this was a voluntary payment, and if made under any mistake, under a mistake of law merely.   The marshal bears the same relation to the circuit court of the United States that a sheriff does to our county courts; and his duties are very analogous to those of a sheriff.   Now it cannot be contended, that Waddell was authorized to receive this money before an execution was duly issued, and placed in his hands.   Then he could have done it: but until the process of the court was in his possession, he had no right to the money.   Suppose him to have received this money as marshal, he having no process, and then he should squander it, the recognizance would not be considered paid. In this case, if the payment had been made to the United States through one properly authorized to receive it, we might hold the payment binding.   Even if the money was handed over to the United States, we might so hold; but such is not the case.   It is still in the defendant's hands.

Corlies *v.* Waddell.

The superior court, in their decision, take the ground that as Waddell has been in the habit, for a long time, of receiving fines, penalties, &c., and afterwards accounting for them, this course has become sanctioned by usage ; and that congress, in passing its annual appropriation bill, sets apart certain moneys *in aid of* the fines and penalties in the marshal's hands, towards the contingent expenses of the court, thus making him virtually a disbursing officer of the government. This is a broad inference from narrow premises, and we cannot rest Mr. Waddell's authority to receive that money on so untenable and frail a foundation. How then does the matter stand ? We can regard Waddell in no other light than as the agent of Bottomley, in this transaction. And while on his way to execute the commands of his principal, he is stopped by him and the authority revoked. Now if the defendant had been at the same time the agent of the government, for the purpose of receiving the money, the case would be different. But such is not the fact. We have come to this conclusion most reluctantly, because there can be no doubt but that the money is properly due to the government ; but they must resort to their action upon the recognizances. The judgment of the superior court must be reversed. and a venire de novo awarded.

McCoun, J., dissented from the opinion of the majority of the court, and concurred with the superior court. The payment by the plaintiff to Waddell was a voluntary payment, and its receipt by the marshal must be considered as a receipt by the government he represented. After such a payment, entirely voluntary on his part, the plaintiff has no right to complain, even though the recognizances were void. The money, when it came into the marshal's hands, became vested in the government, and by previous acts of congress concerning moneys thus in the marshal's hands, became appropriated. I am not prepared to say, that even if these recognizances were void, that fact can be taken advantage of in this court. The recognizances have already been acted upon in another tribunal, by

the order entered for their escheatment, and directing execution to issue thereon; and it seems to me that the party should be left to his remedy there.

